## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

ANNA E. BALLIET, an individual,

PLAINTIFF,

v.

INTRADO, INC., a foreign for-profit corporation,

DEFENDANT.

---

## VERIFIED COMPLAINT

---

COMES NOW the Plaintiff, ANNA E. BALLIET, by and through her undersigned counsel at the law offices of Bryan E. Kuhn, Counselor at Law, P.C., and submits her Verified Complaint against Defendant, INTRADO, INC., alleging as follows:

### INTRODUCTION

1.     This is an employment discrimination and retaliation suit brought by a former employee of Defendant, who was harassed and ultimately terminated from her employment in violation of state and federal law.  Immediately after Plaintiff complained about the inappropriate and harassing actions of her co-worker, she was accused of lying, placed on administrative leave, terminated, and replaced with an employee who had not engaged in protected activity.

2.     Plaintiff asserts claims of harassment, discrimination, and retaliation on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §

2000e *et seq.* ("Title VII").  Plaintiff further asserts claims of harassment, discrimination, and retaliation on the basis of her gender under the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-401, *et seq.* ("CADA").  Finally, Plaintiff asserts state law claims against Defendant for wrongful termination in violation of public policy, breach of contract, and *promissory estoppel.*

## PARTIES

3.     The Plaintiff, ANNA E. BALLIET (hereinafter "Plaintiff" or "Ms. Balliet"), is a citizen of Weld County who presently resides at 767 2nd Street, Windsor, Colorado 80550.

4.     The Defendant, INTRADO, INC., (hereinafter "Defendant," or "Intrado") is a Delaware corporation, doing business as a foreign for-profit corporation in Colorado at 1601 Dry Creek Drive, Longmont, Colorado, 80503, and with a registered agent located at 1560 Broadway Ste. 2090, Denver, Colorado 80202.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331, because the instant action revolves around federal questions arising between the Parties.

6.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.     In addition, this Court has jurisdiction over the Defendant as the complained of unlawful employment practices took place in Colorado and the Defendant maintains substantial, ongoing business operation(s) in this state.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado.

9.      At all relevant times, Plaintiff was an "employee", as set forth in 42 U.S.C. § 2000e(b) of Title VII and in Colo. Rev. Stat. § 24-34-401(2) of the CADA.

10.     At all relevant times, Intrado was covered by the definitions of "employer" set forth in 42 U.S.C. § 2000e(f) of Title VII and in Colo. Rev. Stat. § 24-34-401(3) of the CADA.

## ADMINISTRATIVE PROCEDURES

11.     Plaintiff satisfied her statutory obligation to exhaust administrative remedies by timely filing a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 29, 2015, regarding the alleged discriminatory conduct of Defendant.

12.     On February 24, 2016, Plaintiff received the Notice of Right to Sue from the EEOC and brings her Verified Complaint within ninety (90) days of having received that notice.

## FACTUAL ALLEGATIONS

13.     On May 15, 2015, Plaintiff began working for Defendant as a Security Officer.

14.     Defendant is a subsidiary of West Corporation and provides the nation's 9-1-1 emergency services network, emergency communications, and mobility services.

15.     The bulk of Plaintiff's work consisted of reviewing video footage of alarms from her building, as well as buildings in Texas and Canada.

16.     Throughout her employment, Plaintiff performed her duties satisfactorily.

17. In June 2015, Plaintiff's primary trainer and Defendant's Security Supervisor was arrested and incarcerated for assault.

18. Stacey DeShazer (Security Manager) informed Plaintiff that she was eligible to be promoted to the now vacant position of Security Supervisor.

19. The proposed advancement would include a seven percent (7%) to ten percent (10%) raise, a preferable work schedule, and allow Plaintiff to attend locksmith school.

20. To assist her in the new position, Ms. DeShazer directed Chris Patton (Security Systems Administration Manager) to provide Plaintiff with a new username and password which would allow her to access Intrado's computer system ("Velocity") at a supervisor level.

21. The administrative access codes allowed Plaintiff to make badges, assemble paperwork for new hires, view badge reports, and view non-alarm footage.

22. Plaintiff excelled at her work but was burdened with a hostile work environment, including sexual harassment by a male colleague.

23. On June 9, 2015, Plaintiff was approached by a coworker, Sam Hasson (Associate Technical Support Specialist), who was regularly stationed at the Help Desk.

24. Mr. Hasson asked Plaintiff if the equipment she was carrying was heavy.

25. Plaintiff stated that the weight of the equipment was evenly distributed through her hips and was not heavy.

26. Mr. Hasson then made a scene in front of the other employees, including several jokes at Plaintiff's expense.

4

27.    Later that afternoon, Mr. Hasson approached my client and twice said, "oh yeah, your hips were way off."  Mr. Hasson made the comments while rocking his hands back and forth to mimic the movement of her hips and starting at her pelvic area in an exaggerated and overtly sexual manner.

28.    Then and over the course of her employment, Plaintiff was made aware of Intrado's policies and procedures which prohibit sexual harassment of or by any employee and tell employees to report concerns.

29.    Further, Defendant's written policies specifically prohibit retaliation of any type against an employee who reports harassment or discrimination.

30.    On June 10, 2015, Plaintiff reported the behavior to Lamikia Lawson (Security Supervisor and Trainer).

31.    Ms. Lawson told Plaintiff that if she did not contact a supervisor about the issue, she would probably be fired.

32.    Plaintiff contacted Ms. DeShazer about the incident at Ms. Lawson's insistence.

33.    Ms. DeShazer instructed Plaintiff to file a written report about the incident and submit it to Human Resources.

34.    Plaintiff was unsure about the name of the person who harassed her so Ms. DeShazer showed her how to log-in to the administrative account to review badge photos and identify the harasser.

35.    Plaintiff selected the photo of one (1) man she believed to be the perpetrator.

5

36.    Ms. DeShazer then showed Plaintiff how to review the badge reports to see when the pair were in the same location in the building at the same time.

37.    Further, Ms. DeShazer showed Plaintiff how to review the non-alarm video footage from Intrado's recording system from the CCTV cameras ("DVR") to see when the harassment occurred.

38.    Plaintiff returned to the Help Desk where she was able to ascertain the perpetrator's identity as Mr. Hasson.

39.    Jim Cusack (Help Desk Supervisor) was present when Plaintiff returned to the area.

40.    Mr. Cusack told Plaintiff to "ignore" Mr. Hasson and that she had his permission to "hit [Mr. Hasson] over the head with her tablet," if he continued his behavior towards her.

41.    Plaintiff contacted Ms. Lawson to update her on the investigation and notify her that she reported the harassment to Ms. DeShazer as instructed.

42.    Ms. Balliet did not recall exactly how Ms. DeShazer had instructed her to review the non-alarm video footage and asked Ms. Lawson for assistance with the process during their telephone call.

43.    Ms. Lawson gave Plaintiff step by step instructions on how to obtain DVR video footage from non-alarm events.

44.    Ms. Balliet reviewed the video tape and further confirmed the identity of Mr. Hasson.

45.    Using this new information, Plaintiff submitted a written complaint to Ms. DeShazer on June 10, 2015.

46.     Upon information and belief, Ms. DeShazer forwarded the letter to Debbie Hall (Regional Employee Relations Manager).

47.     On June 17, 2015, Ms. Hall interviewed Plaintiff and informed her that an investigation into the allegation(s) would take place.

48.     Upon information and belief, Ms. Hall discussed the incident(s) with Ms. Lawson and Ms. DeShazer.

49.     Ms. Lawson admitted to Ms. Hall that she showed Plaintiff how to review the DVR.

50.     Ms. Balliet told Ms. Lawson that she reviewed the DVR to look for her harasser and Ms. Lawson did not tell Plaintiff that it was inappropriate for her to do so.

51.     Ms. DeShazer admitted to Ms. Hall that she showed Ms. Balliet how to run a badge report to identify the employee who allegedly used his badge to go through the portal at the same time.

52.     Similarly, Ms. DeShazer did not tell Plaintiff that it was inappropriate for her to review the badge reports or non-alarm footage.

53.     Upon information and belief, Ms. Hall interviewed Mr. Hasson and Ken Rossey (Technical Support Specialist)

54.     Upon information and belief, Ms. Hall failed to interview two (2) other male employees shown on the video footage who witnessed the incident with Mr. Hasson.

55.     On July 1, 2015, Ms. Hall presented the results of her investigation and accused Plaintiff of "lying, overreacting, and abusing the system."

56. Further, Ms. Hall told Plaintiff to, "do some soul searching" and really think about what happened and what she did to bring the harassment upon herself.

57. Ms. Hall provided a written statement which said that Plaintiff "reviewed the video prior to reporting the incident to your manager," which was inaccurate.

58. The written results further stated that, "using our systems for your personal use is not acceptable," clearly ignoring that Plaintiff was admittedly directed to review the video and badge reports by two (2) of her supervisors.

59. Plaintiff refused to sign this document because it contained false statements.

60. However as directed by Ms. Hall, Plaintiff wrote in at the bottom, "ask for copy, refused to sign," and then affixed her signature thereto.

61. Plaintiff left the meeting and texted Ms. DeShazer that she was concerned she would be fired for following Intrado's complaint procedure.

62. Ms. DeShazer texted back, "[I] need you to answer phones in the north and start masking doors. You aren't going to get fired."

63. Plaintiff went right back to work without delay.

64. Later that afternoon, Ms. Hall emailed Plaintiff that she had escalated the refusal to sign the fictitious memorandum to Gary Childress (Director of Facilities).

65. Ms. Hall also placed Plaintiff on administrative leave effective immediately until July 6, 2015, for "refusing to sign the Memo."

66. Plaintiff was required to submit a statement about Ms. DeShazer and Ms. Lawson's roles in reviewing the tapes and in the complaint process.

8

67.    Ms. Hall also stated that the management team was, "concerned about" Plaintiff's reaction to the meeting because Ms. Balliet stated that the company's investigation into the matter was "retarded."

68.    However, Ms. Hall did not state at that time that Plaintiff had failed to return to work after their meeting on July 1, 2015.

69.    Ms. Hall told Plaintiff she was required to be available for a phone conference but also immediately turned off Ms. Balliet's access to her company cell phone.

70.    On July 6, 2015, Plaintiff submitted a signed written statement to Ms. Hall wherein she detailed that Ms. Lawson and Ms. DeShazer roles in the complaint process, reviewing the badge activity data, and video tapes.

71.    Similarly, Ms. Balliet's written statement explained her frustrations that she was being called a liar simply for bringing a good faith report of sexual harassment.

72.    Ms. Hall and Plaintiff scheduled a conference call on July 8, 2015, to discuss the written statement.

73.    After learning that the company cell phone was Plaintiff's only phone, Ms. Hall turned the phone back on temporarily for the conference call.

74.    That afternoon as she waited for the call, Plaintiff experienced heart attack symptoms.

75.    While being transported to the hospital, Plaintiff informed Ms. Hall of the medical emergency.

76. Ms. Hall stated that Ms. Balliet's request for medical attention seemed, "suspicious."

77. Thereafter, Ms. Hall fired my client over text message, stating, "[Y]our management decided early today that they are moving forward with separation effective today."

78. On July 9, 2015, Plaintiff received a termination letter with the stated reason of "performance issues (not a good fit)."

79. Upon information and belief, Defendant has a policy, procedure, and/or actual practice of providing progressive discipline to employees prior to termination.

80. The progressive discipline policy was well known to Defendant's employees.

81. Defendant did not give Plaintiff any warning before firing her.

82. In violation of Defendant's progressive discipline policy, Plaintiff was not given an opportunity to participate in any investigation into the allegations against her.

83. Further, Defendant has an anti-retaliation policy which expressly prohibits retaliation against an employee who has filed a good faith complaint concerning allegations of discrimination and harassment.

84. Ms. Balliet admittedly complained about harassment to Ms. DeShazer, Ms. Lawson, and Ms. Hall between June 9, 2015 and June 10, 2015.

85. Twenty-one (21) days later, on July 1, 2015, Plaintiff was placed on an administrative leave.

86. Twenty-eight (28) days after her protected activity, on July 8, 2015, Plaintiff was summarily terminated from her employment for "not being a good fit."

10

87.    Defendant said Plaintiff was terminated because she failed to return to work after her meeting with Ms. Hall, made inaccurate statements during the investigation, and had an unprofessional response to the investigation's results.

88.    In fact, Defendant ignored clear contrary evidence and allowed HR to exercise discriminatory animus and terminate Plaintiff without following the progressive discipline procedures, without investigation, and in retaliation for her complaints.

### FIRST CLAIM FOR RELIEF
*(Violations of Title VII – Willful Discrimination)*

89.    Plaintiff incorporates by reference paragraphs 1 through 88 as if fully set forth herein.

90.    Plaintiff belongs to a protected class based on her sex.

91.    Plaintiff was qualified for the job with Defendant.

92.    Defendant fired Plaintiff despite her qualifications.

93.    Defendant was motivated to discriminate against Plaintiff, in part, by its attitudes about her gender.

94.    Defendant's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

95.    Defendant's conduct discriminated against Plaintiff on the basis of her gender in violation of Title VII.

96.    As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits, diminished

11

reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## SECOND CLAIM FOR RELIEF
*(Violations of Title VII – Sexual Harassment)*

97. Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

98. While employed with Defendant, Plaintiff was subjected to harassment by the Intrado on account of her sex.

99. The sexual harassment was both objectively and subjectively offensive and severe.

100. The conduct was unwelcomed and was directed at Plaintiff because of her gender.

101. The conduct was sufficiently severe and/or pervasive so as to alter the terms and conditions of Plaintiff's employment by creating a hostile work environment under both a subjective and objective standard.

102. Plaintiff took reasonable steps to report the sexual harassment to her supervisor and Defendant's Human Resources department.

103. Intrado failed to take reasonable actions to stop the sexual harassment despite knowing of the harassment.

104. Intrado's conduct violated 42 U.S.C. § 2000e-3(a) of Title VII.

105. As a direct, proximate, and foreseeable result of Defendant's intentional violations of Plaintiff's rights under Title VII, the Plaintiff has suffered damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
*(Violations of Title VII – Retaliation)*

106.  Plaintiff incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

107.  Plaintiff participated in statutorily protected opposition to Title VII discrimination by complaining about harassment based on her sex.

108.  As a result of Plaintiff's protected opposition to harassment, Intrado retaliated against her by subjecting her to less favorable terms and conditions of employment as described in this Complaint, including termination.

109.  Intrado's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

110.  Intrado's conduct violated 42 U.S.C. § 2000e-3(a) of Title VII.

111.  As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## FOURTH CLAIM FOR RELIEF
*(Violations of the CADA - Discrimination)*

112.  Plaintiff incorporates by reference paragraphs 1 through 111 as if fully set forth herein.

113.  Defendant, its employees, and agents unlawfully discriminated against Plaintiff by harassing her during the course of her employment because of her sex.

114.  Defendant's actions were unlawful, intentional, willful, and done in reckless disregard of Plaintiff's legal rights as protected by the CADA.

115.  Plaintiff demonstrated a pattern of opposition to the unlawful harassment, retaliation, and discrimination that she experienced based upon her sex while employed by Defendant.

116.  Defendant's conduct as described herein constituted a discriminatory or unfair employment practice in violation of Colo. Rev. Stat. § 24-34-402(1)(a).

117.  As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits.

## FIFTH CLAIM FOR RELIEF
*(Violations of the CADA – Sexual Harassment)*

118.  Plaintiff incorporates by reference paragraphs 1 through 117 as if fully set forth herein.

119.  Plaintiff was subjected to harassment by Intrado on account of her sex.

120.  The sexual harassment was both objectively and subjectively offensive and severe.

121.  The sexual harassment was sufficiently severe or pervasive that it amounted to a change in the terms and conditions of Plaintiff's employment creating a hostile work environment.

122.  Plaintiff filed a complaint with the appropriate authority in the workplace.

123.  Defendant's Human Resources department failed to initiate a reasonable investigation and take prompt remedial action.

14

124.  Defendant's conduct as described herein constituted a discriminatory or unfair employment practice in violation of Colo. Rev. Stat. § 24-34-402(1)(a).

125.  As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits.

## SIXTH CLAIM FOR RELIEF
*(Violations of the CADA - Retaliation)*

126.  Plaintiff incorporates by reference paragraphs 1 through 125 as if fully set forth herein.

127.  Plaintiff engaged in statutorily protected opposition to harassment by complaining about the treatment she was experiencing and the policy violations of her co-worker.

128.  As a result of Plaintiff's protected opposition to discrimination, Defendant retaliated against her by subjecting her to less favorable terms and conditions of employment, including termination.

129.  Defendant's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

130.  A reasonable employee would have found Defendant's actions to be materially adverse.

131.  There is a causal connection between the protected activity of complaining and the materially adverse action.

132.  Defendant's conduct as described herein constituted a discriminatory or unfair employment practice in violation of Colo. Rev. Stat. § 24-34-402(1)(a).

15

133.  As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits.

## SEVENTH CLAIM FOR RELIEF
*(Wrongful Termination in Violation of Public Policy)*

134.  Plaintiff incorporates by reference paragraphs 1 through 133 as if fully set forth herein.

135.  The CADA constitutes the public policy of the State of Colorado by prohibiting, among other things, discrimination against employees in the basis of their sex and retaliation against employees who exercise their rights by opposing unlawful employment practices.

136.  The policies set forth in the CADA are policies that truly impact the public.

137.  Plaintiff was terminated by Defendant in retaliation for exercising a job-related right or privilege, and the termination undermines a clearly expressed public policy.

138.  Defendant's conduct was malicious, willful and/or wanton, and exhibited reckless or callous indifference to Plaintiff's protected rights.

139.  As a direct and proximate result of such false representations, Plaintiff has suffered and continues to suffer a loss of wages and benefits, a loss of job, loss of career opportunities and interruption of career path, emotional distress, inconvenience, mental anguish, loss of enjoyment of life and other consequential damages.

## EIGHTH CLAIM FOR RELIEF
*(Breach of Contract)*

140.  Plaintiff incorporates by reference paragraphs 1 through 139 as if fully set forth herein.

16

141.  Plaintiff and Defendant entered into an employment agreement whereby Defendant promised not to discriminate on the basis of gender by way of its company policies, or retaliate against employees for filing discrimination complaints.

142.  The employment agreement entered into between the parties set forth each party's rights, duties, and obligations upon which the employment relationship was to continue.

143.  Employees were to report discrimination and harassment, whether observed or experienced, to a supervisor, member of management, or human resources representative.

144.  Plaintiff performed her part of the agreement by satisfactorily performing in her position and reporting her concerns and claims of sexual harassment to her supervisors, management, and Defendant's Human Resources representative.

145.  Defendant breached the Parties' employment agreement by discriminating against the Plaintiff on the basis of her gender, and by retaliating against her following the Plaintiff's complaints about harassment and discrimination in the workplace, which breach has resulted in damages to Plaintiff in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF
*(Promissory Estoppel)*

146.  Plaintiff incorporates by reference paragraphs 1 through 145 as if fully set forth herein.

147.  Plaintiff and Defendant entered into an employment agreement whereby Defendant promised not to discriminate on the basis of gender and not to retaliate against Plaintiff for making complaints about harassment or discrimination.

17

148.  Defendant should reasonably have expected Plaintiff would consider these promises as a commitment from Defendant.

149.  In reasonable reliance upon the Defendant's promises not to discriminate against Plaintiff and to not retaliate against her, Plaintiff remained working for Defendant and did not actively seek other employment, to Plaintiff's detriment.

150.  Injustice can only be avoided by enforcement of the Defendant's promises and commitments to maintain a workplace free of gender based harassment and retaliation.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a judgment to be entered in her favor and against Defendant, and Order the following relief:

a.  Front pay and benefits in lieu of reinstatement;

b.  Back pay, benefits, and other economic losses;

c.  Compensatory damages, including but not limited to those for emotional distress;

d.  Liquidated damages on all claims allowed by law;

e.  Punitive and exemplary damages as allowed by law;

f.  Relevant statutory damages;

g.  Pre-judgment and post-judgment interest at the highest lawful rate;

h.  Attorney fees and costs of this action, including expert witness fees, as available by law; and,

i.  Any such further relief allowable by law or as justice requires.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable in the instant action.

Respectfully submitted on April 18, 2016.

BRYAN E. KUHN, COUNSELOR AT LAW, P.C.

*Original pleading bearing original signature maintained in the offices of Bryan E. Kuhn, Counselor at law, P.C.*

s/ *Bryan E. Kuhn*
Bryan E. Kuhn, Esq. #33642
Kate W. Beckman, Esq. #42416
1660 Lincoln Street, Suite 2330
Denver, Colorado 80264
(p) (303)424-4286 (f) (303)425-4013
Bryan.Kuhn@beklegal.com
Kate.Beckman@beklegal.com
ATTORNEYS FOR PLAINTIFF

## VERIFICATION

I declare under penalty of perjury that I have read this above Verified Complaint and the statements contained in it are true and correct to the best of my knowledge and belief.

Date:  April 18, 2016

_____
Anna E. Balliet

Subscribed and sworn to before me in the county of Weld, State of Colorado, this 18 day of April, 2016.

My commission expires on: APRIL 24, 2019

_____
Notary

```
ERIC MUNIZ
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154016318
MY COMMISSION EXPIRES APRIL 24, 2019
```

20